IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

MARY HAMPTON                                                                                                    PLAINTIFF

V.                                            NO. 2:09cv00058 JWC

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration                                                                                    DEFENDANT

## MEMORANDUM OPINION AND ORDER

Introduction

Plaintiff, Mary Hampton, seeks judicial review of the denial of her claims for a period of disability and disability insurance benefits and for supplemental security income benefits. Judicial review of the Commissioner's denial of benefits examines whether the decision is based on legal error and whether the findings of fact are supported by substantial evidence in the record as a whole. *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009); *see* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion." *Wiese*, 552 F.3d at 730. In its review, the Court[1] must consider evidence supporting the Commissioner's decision as well as evidence detracting from it. *Id.* That the Court would have reached a different conclusion is not a sufficient basis for reversal; rather, if it is possible to draw two inconsistent conclusions from the evidence and one of these conclusions represents the Commissioner's findings, the denial of benefits must be affirmed. *Id.*

---

[1] The parties have consented to the jurisdiction of the Magistrate Judge.

Plaintiff filed her claim on January 24, 2006, alleging disability due to severe, bilateral hearing loss, with an onset date of November 15, 2005. Plaintiff was forty-eight years old at the time of the hearing. She had past relevant work as a rice dump operator in a rice mill.

An Administrative Law Judge (ALJ) held a hearing on December 19, 2007, and rendered his opinion finding Plaintiff not disabled on February 28, 2008. To evaluate Plaintiff's claim, the ALJ followed the five-step sequential process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, he found that Plaintiff suffered a severe impairment of profound sensorineural hearing loss in both ears. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the listings). At step four he evaluated Plaintiff's credibility, finding her complaints not fully credible. The ALJ also determined that Plaintiff had significant limitations in her capacity for lifting/carrying more than ten pounds frequently or twenty pounds occasionally or work requiring specific hearing acuity. He found Plaintiff unable to perform her past relevant work and carried the analysis to step five. At step five, he relied on the testimony of a Vocational Expert (VE) and determined that a significant number of jobs existed in the national economy which Plaintiff could be expected to perform, finding Plaintiff "not disabled."

Plaintiff raises three arguments. First, that there is no substantial evidence supporting the ALJ's finding at step three that she failed to meet a listing; second, that the

2

hypothetical posed to the VE was flawed; and third, that the ALJ's credibility analysis was faulty.

## Listing Argument

Plaintiff argues that the ALJ's conclusion at step three that she failed to meet a listing for impaired hearing is not supported by substantial evidence. The claimant has the burden of showing that her impairment meets all of the listing's specified criteria. *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010). An impairment that manifests only some of the listing criteria, no matter how severely, does not qualify. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).

The listing at issue, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 208 provides:

> 2.08   Hearing Impairments (hearing not restorable by a hearing aid) manifested by:
>
> > A.   Average hearing threshold for air conduction of 90 decibels or greater and for bone conduction to corresponding maximal levels, in the better ear, determined by the simple average of hearing threshold levels at 500, 1000 and 2000 Hz (*see* 2.00B1); or
> >
> > B.   Speech discrimination scores of 40 percent or less in the better ear.

As Defendant argues, Plaintiff must show she met the hearing loss thresholds in her "better ear," with the assistance of a hearing aid if her hearing is restorable by use of an aid. While Plaintiff has moderate to profound hearing loss, it remains her burden to show that she meets all the criteria of this listing in order to establish at step three that she is disabled.

Plaintiff points out that the ALJ wrote a cursory analysis at step three, merely stating that she did not meet a listing. It is true he did not discuss his finding, but the real issue is whether that finding is supported by substantial evidence. The fact that the ALJ did not

3

elaborate on his conclusions and did not specifically mention any particular listing does not require reversal where, as here, the record supports his overall conclusion that Plaintiff failed to make the requisite step-three showing. *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006).

Plaintiff argues that she suffered a bilateral hearing loss and that records of a hearing test in June 2006, showed she was capable of speech discrimination of only 42 percent. While this was close to meeting 208B, it did not. Further, this result was without use of a hearing aid, and later testing with and without use of hearing aids showed considerably better results, as will be discussed below.

Plaintiff's brief states that "hearing aids are not helping as cochlear implantation is seen as the best option."[2] This is not accurate. Although doctors determined that a cochlear implant would be the best option,[3] the record shows use of hearing aids did help, at least to some extent. Dr. John Dornhoffer, a treating physician, stated in a letter dated February 3, 2006, Plaintiff "gets minimal hearing benefit from hearing aids." (Tr. 150.) However, this statement is contradicted to an extent by evidence that Plaintiff did not use hearing aids before January 2007, and by the results of hearing tests conducted as part of her Cochlear Implant Candidacy Evaluation (which evaluation was done February 5 through June 12, 2007). In her initial case history, Plaintiff stated that she did not have a hearing aid (Tr. 141) and the evaluation report includes the statement, "She had never

---

[2] Pl.'s Br. at 9. Plaintiff has not availed herself of this option, apparently because of financial considerations.

[3] Implantation would apparently be the best option. However, this is not relevant to resolution of the limited issue whether she meets the listing.

4

worn hearing aids until January of 2007.[4] . . ." (Tr. 146). The same report quotes Plaintiff as saying "she feels she is hearing better with her hearing aids and is able to understand more auditory information." (*Id.*)  More importantly, the tests revealed that Plaintiff's average hearing threshold sensitivity for air conduction at the 500, 1000 and 2000 Hz levels was 78.33 decibels in the better ear and 85 decibels in the other, well below the listing's criterion of 90 decibels or higher. (Tr. 146.)  That is, Plaintiff was able to hear sound at levels below the thresholds required by the listing.  The average levels for the corresponding frequencies in the functional gain testing were even better at 36 decibels in the better ear and 41 in the other, indicating that the hearing aids were of benefit. (Tr. 147.)  Moreover, the result for speech discrimination was sixty-three percent, far better than the listing criteria under 208B of forty percent.  The report makes it clear that the actual testing was done without the aid of lip-reading.[5]  (*Id.*)

Plaintiff points to a letter from Dr. Stephen Shorts, also a treating physician, dated November 29, 2006, in which he states that Plaintiff had suffered a significant progression in loss of hearing and that "She is now at approximately 80-90 dB with about a 4% discrimination level." (Tr. 197.) This letter is not a basis for reversing the ALJ's findings at step three.  This testing was done before Plaintiff began wearing hearing aids and there is no indication the testing was performed with them.  The levels were "approximate," and the speech discrimination level was "about" four percent.  That discrimination level was

---

[4] There is no information in the record showing use or testing of hearing aids before that date, but perhaps there was minimal use or testing prior to that date which does not appear.  In any event, the testing done in connection with the Cochlear Implant evaluation constitutes substantial evidence supporting the conclusion that Plaintiff did not meet the listing.

[5] The evaluation states, "All tests were administered in the auditory mode only without lip reading." (Tr. 147.)

substantially below the forty-two percent noted in June 2006, as well as the sixty-three percent (without aids) noted during the evaluation study.  Even had the letter been before the ALJ, he would have been justified in discounting it and relying on the results of the other testing, particularly that done as part of the cochlear implant evaluation.

Plaintiff mentions the findings in the cochlear implantation evaluation report that bone conduction tests indicated no response within limits of the audiometer.  There is no indication in the file of the significance of this finding and Plaintiff provides none.  Clearly, however, Plaintiff is able to hear at a level above the thresholds despite the lack of bone conduction.  Further, subsection A of the listing requires a claimant to meet the air conduction thresholds <u>and</u> "for bone conduction to corresponding maximal levels. . ." Plaintiff does not meet the thresholds for air conduction, nor does she meet the speech discrimination requirement.

Plaintiff argues that the ALJ has a duty to develop the record and that the case should be remanded for further development or an expert opinion.  The duty to develop the record is subject to reasonableness and the ALJ need only ensure that the record is sufficiently developed so he can make an informed decision based upon substantial evidence.  An ALJ need only develop a "reasonably complete record," not a perfect record. *See Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996).  Absent unfairness or prejudice, remand is not appropriate.  *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993). Moreover, it is Plaintiff's responsibility to present the strongest case possible.  *See Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991).  For purposes of considering the listing in question, the testing and report done in connection with Plaintiff's evaluation for cochlear

implants is sufficient substantial evidence, and the ALJ did not need to further develop the record.

There is substantial evidence supporting the ALJ's decision on this point and Plaintiff has failed to meet her burden of showing that she is disabled under the listing in question.

Hypothetical Question

As stated above, the ALJ found Plaintiff to be unable to return to her past relevant work, but found that a significant number of jobs do exist in the national economy which Plaintiff would be able to perform, considering her age, education, past work experience and residual functional capacity.  This argument is actually an attack on the sufficiency of the hypothetical question posed to the VE at the hearing.

The testimony of a VE constitutes substantial evidence only when "based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies."  *Robson v. Astrue*, 526 F.3d 389, 392 (8th Cir. 2008).  The hypothetical need include only those impairments or restrictions that are supported by the record and that the ALJ accepts as valid.  *Howe v. Astrue*, 499 F.3d 835, 842 (8th Cir. 2007).

The ALJ posed the following hypothetical to the VE:

> Assume an individual the same age, education and work experience as the Claimant, and further assume that this individual has a residual functional capacity for light work as that term is defined in the Dictionary of Occupational Titles, but due to severe bilateral hearing loss is unable to hear anything more than loud conversational tones with the individual's directly addressing her.

(Tr. 234.)

7

The VE's response was that Plaintiff could work as an assembler in manufacturing or production type work, and the ALJ adopted this testimony in determining that Plaintiff was not disabled.[6] (Tr. 234.) Plaintiff says this finding is not supported by substantial evidence.

Plaintiff argues that her hearing is substantially impaired and that her doctors have stated the opinion her hearing loss is severe and would interfere with her ability to work. There is no doubt Plaintiff suffers from severe loss and that it would interfere with her performance of past relevant work; in fact, the ALJ made those findings. Plaintiff cites to three doctors' findings in making her argument. However, all of those findings were made prior to her use of hearing aids.[7] Plaintiff also refers to a report of Dr. Shorts in June 2008 (Tr. 196) "indicating that she was able to lip read with the assistance of a hearing aid, but that she had significant limitation due to the hearing loss." (Pl.'s Br. at 12.) That may well be true, but the statement is not inconsistent with the limitations noted in the hypothetical question at issue.

The record contains substantial evidence that the use of hearing aids significantly improved Plaintiff's ability to understand conversations when the person was speaking directly to her. As noted above, in the course of her cochlear implant evaluation, Plaintiff stated that she felt she was hearing much better with the hearing aids and was able to better understand more auditory information. The results of tests made during the

---

[6] The VE testified that there were 150,000 such jobs nationally and 2500 in the State of Arkansas. Under cross examination, he stated that there were about 340 such jobs in the immediate local area.

[7] She refers to Dr. Dornhoffer's report in February 2006 (Tr. 123); Dr. Shorts' report in June 2006 (Tr. 81); and Dr. Shorts' report in November 2006 (Tr. 197).

evaluation confirm her feeling.  The results of the functional gain testing for air conduction were substantially better than the conduction results without the aids.  Her word discrimination results were markedly better than the results in testing before she used the aids.[8]  The strongest support of Plaintiff's ability to understand "loud conversational tones with the individual's directly addressing her," as stated in the hypothetical, comes from review of the transcript of her hearing before the ALJ.  During the course of the hearing, she was able to respond appropriately to all questions asked of her.[9]  Many of the questions asked certain information of her, not just a "yes or no" response, and her answers were clearly responsive.  Only once did she say she did not understand, and that was only momentary.[10]  It is clear from the transcript that the hypothetical question accurately described Plaintiff's limitations.  The findings based on the response to the hypothetical question are based on substantial evidence.

Plaintiff argues that an alternate hypothetical, containing the limitation that she is completely deaf and unable to understand any conversation "may well be the most accurate description of her abilities as time goes on." (Pl.'s Br. at 13.)  While that may be an appropriate consideration for a subsequent petition, should Plaintiff's condition continue to worsen, the issue before the Court is her condition during the relevant time period.

---

[8] *See*, Tr. 146-147.

[9] Tr. 216-232.

[10] Tr. 221.

Credibility Determination

While the ALJ did state that he found Plaintiff's allegations not bourne out by the overall record and not fully credible, he did give them substantial weight in determining that she has severe bilateral hearing loss and "is unable to hear anything more than loud conversational tones with the individual's directly addressing her." The evidence of record sustaining this conclusion is substantial. Plaintiff does not contend that she is totally deaf and unable to hear any conversations. The record clearly supports the proposition that she would be able to hear a person speaking loudly and directly to her, which is essentially consistent with the hypothetical question. The Court recognizes the fact that Plaintiff has a good work record, but that is just one factor to consider. Her complaints about difficulties in the workplace are necessarily based on her experience while working, because she has not worked since her onset date. She was working without the help of hearing aids. The jobs which the ALJ found she could perform would require much less hearing ability. The fact that the ALJ to some extent doubted Plaintiff's credibility did not improperly determine the outcome of the case.

Conclusion

The Court finds that the ALJ did not commit legal error and that his findings are supported by substantial evidence of record. This case is therefore dismissed with prejudice.

IT IS SO ORDERED this 15th day of September, 2010.

_____
UNITED STATES MAGISTRATE JUDGE